IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| NICOLE KORDUS, | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| TOLTECA ENTERPRISES, INC, d/b/a | § | Civil No.: SA-18-cv-00326-OLG |
| PHOENIX RECOVERY GROUP a Texas | § | |
| Corporation; TRAVELERS CASAULTY AND | § | |
| SURETY COMPANY d/b/a TRAVELERS | § | |
| CASAULTY AND SURETY COMPANY OF | § | |
| AMERICA, a Connecticut Corporation; and | § | |
| JOHN AND JANE DOES NUMBERS 1 | § | |
| THROUGH 10, | § | |
| Defendants. | § | |
| | § | |

## PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT ON SETTLEMENT

COMES NOW the Plaintiff, Nicole Kordus, by and through her undersigned counsel, and respectfully moves this Honorable Court to enforce the Parties' settlement agreement and for entry of judgment summarily in her favor in the amount of $9,500.00, and in the amount of $4,085.00 in attorney's fees. In support, Plaintiff respectfully states the following:

## I. RELEVANT FACTS REGARDING PLAINTIFF'S CLAIMS

Ms. Kordus filed this lawsuit on April 12, 2019. [Doc. 1.] She is a Wisconsin resident, and a single mother of 3 young children. Years ago, Ms. Kordus fell behind on rent payments to her landlord, the Southview Park Apartment Complex ("Southview") in Winnebago County, Wisconsin [*Id.* at ¶23.] In June 2011, Southview sued Ms. Kordus and obtained a default judgment against her. [*Id.* ¶¶25-26.]

Shortly before February 10, 2016, "Bob Thomas" of Tolteca communicated with Ms. Kordus and led her to believe Tolteca was authorized to collect the Southview's judgment. *Id.* Discovery revealed that "Bob Thomas" is actually a fictious name used by Tolteca's Chief

Operating Officer, Eric Allen. Mr. Allen is a convicted felon (of fraud and embezzlement of approximately $50,000.00). [*Thomasson Decl.*, ¶14.]

Ms. Kordus paid Tolteca the full amount of the judgment, based on Tolteca's representations that her payment would satisfy the judgment and Tolteca would delete the credit reporting associated with the debt. Tolteca sent Ms. Kordus a letter dated February 10, 2016 titled "ZERO BALANCE LETTER" [emphasis in original] that indicated the Debt had been "paid in full." [Doc. 1 ¶¶29-33, Exhibit.]

Relying on the February 10, 2016 Letter, on February 24, 2016, Ms. Kordus took it to the Winnebago County Clerk of Courts, Small Claims Division, and the clerk stamped it and filed it as a record of her satisfaction of her judgment. [Doc. 1 ¶35.] In a letter dated July 22, 2017, Southview's Wisconsin attorney filed a letter with the Court stating that:

> [Southview] represented to me that this claim has not been paid to their office. This claim has not been paid to our office either.
>
> My client represented that they have no idea who this Phoenix Recovery Group is, that they never hired that company, and that company has no authority to act on behalf of my client.
>
> [Southview] represented to my office that the judgment in this matter has not been satisfied, that they have not received any payments toward the balance owed on this account, and that the full balance is still due and owing to them.

Ms. Kordus did not discover that Tolteca's representations were untruthful until after her satisfaction of judgment was vacated on August 30, 2017. During discovery, she learned Southview had fired Tolteca years before it communicated with her and took her money, and Southview had demanded Tolteca return all its collection accounts. [*Thomasson Decl.*, ¶17.]

The judgment vacation caused Ms. Kordus's credit report to report negative information about nonpayment of rent and the judgment, which resulted in her inability to obtain/rent safe housing for her children and obtain a previously approved loan from Habitat for Humanity for new/safe housing. [Doc. 1 ¶¶37-38, 41-42, and Exhibit C.]

## II.    FACTS REGARDING SETTLEMENT

Since the outset of the case, Plaintiff made several efforts to settle this litigation, but Tolteca made no efforts to resolve the case until after the Parties had completed written discovery and depositions. [*Thomasson Decl.*, ¶20.] During the deposition of Defendant's key managerial employee in November 2018, Tolteca finally began discussing settlement including its desire to mediate [*Id.* and Doc. 17.] Tolteca subsequently became uncooperative with its counsel, which resulted in its Tolteca's counsel consenting to Plaintiff filing a Motion to Compel Mediation and Requesting Leave to File a Motion for Summary Judgment [*Id.* and Doc. 18], which Plaintiff filed on May 20, 2019 [Doc. 19] and the Court granted on May 22, 2019. Following the Court's Order on May 22, 2019, Tolteca found a renewed desire to mediate the case and the Parties filed a joint motion for same on June 4, 2019. [Doc. 20]

On June 28, 2019, at Tolteca's request, Plaintiff travelled from Wisconsin to participate in an in-person mediation with Tolteca. [*Thomasson Decl.*, ¶2.] The mediation was conducted by the Hon. John D. Gabriel, Jr. (Ret.). *Id.* The Parties reached a settlement at mediation, which they reduced to a written agreement and executed. [*Id.* (and ***Exh. A***).]

Ms. Kordus suffered damages in excess of $10,000.00, but despite several demands, Tolteca refused to the bare minimum of satisfying Ms. Kordus's Southview judgment until just prior to the Parties' mediation on June 28, 2019. [*Id.* at ¶22.] Additionally, prior to mediation, Ms. Kordus had incurred $3,103.60 in costs and approximately $28,500.00 in attorney's fees pursuing Ms. Kordus's claims. [*Id.* at ¶23.] Notwithstanding this, for reasons discussed at mediation Tolteca pleaded for Plaintiff to accept a significantly lower amount on the terms expressed in the Agreement. *Id.* Plaintiff entered the Agreement in good faith based solely on Tolteca's express promises to pay the amounts due and that it do so in a timely fashion. *Id.*

### III.    RELEVANT TERMS OF THE PARTIES' AGREEMENT

Pursuant to the Parties' executed Agreement, Tolteca agreed to pay Plaintiff $13,000.00 in nine installment payments to Plaintiff's counsel with its first payment of $3,500.00 to be received by July 8, 2019; payments 2-8 (each for $1,187.50) were required to be received by Plaintiff's counsel monthly on the 8th day of each month beginning August 8, 2019, and ending March 8, 2020. [*Id.* at ¶3 (and ***Exh. A***, ¶2).] Tolteca made its July 8, 2019 installment payment and, therefore, Plaintiff filed a Notice of Settlement [Doc. 22] with the Court. *Id.*

To date, Plaintiff has not received Tolteca's second installment payment which was due on August 8, 2019. [*Id.* at ¶4 (and ***Exh. A***, ¶2).] Consequently, beginning August 9, 2019 Tolteca was in default under the terms of the Parties' Agreement. *Id.*

On August 16, 2019, in accordance with Paragraph 2 of the Agreement, Plaintiff provided "written notice of the default to Tolteca's counsel [Thomas Clarke] via email." *Id.* at ¶5 (and ***Exh. B***).] Plaintiff's counsel also called Mr. Clarke on August 20, 2019, but he did not answer and was unable to leave a message. *Id.* The Agreement allowed Tolteca "3 business days following its receipt of notice" (*i.e.*, August 21, 2019) to cure its default. [*Id.* (and ***Exh. A***, ¶2).]

To date, Plaintiff's counsel has not received Tolteca's second installment payment and, it has neither responded to Plaintiff's August 16th email nor communicated with Plaintiff's attorneys. [*Id.* at ¶6.] The Parties' Agreement provides, in relevant part, as follows:

> If any installment payment is not received by the due date, or fails to clear Claimant's attorney's trust account, Claimant's attorneys shall provide written notice of the default to Tolteca's counsel via e-mail. If Tolteca's default is not cured within 3 business days following its receipt of notice, then Claimant shall be entitled to have judgment entered against Tolteca for all amounts that remain unpaid as well as Claimant's reasonable attorney's fees and costs incurred in obtaining the judgment and/or enforcing this Agreement. [*Id.* at ¶7 (and ***Exh. A***, ¶2).]
>
> * * *
>
> If any party files any litigation to enforce this Agreement, then the prevailing party to any enforcement action shall be entitled to reasonable attorney's fees and reimbursement of costs. [*Id.* (and ***Exh. A***, ¶8).]

-4-

### IV.    THE PARTIES' AGREEMENT IS SUMMARILY ENFORCEABLE

Trial courts possess the inherent authority to enforce a settlement agreement and to enter judgment based on an agreement without a plenary hearing. *Bell v. Schexnayder*, 36 F.3d 447, 449 (5th Cir. 1994); *accord Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389 (5th Cir. 1984) ("A District Court has the power to enforce summarily a settlement agreement reached in a case pending before it."); *accord. A & D P'ship v. Equity Grp., Inc.*, Civil Action No. 87-3139, 1989 U.S. Dist. LEXIS 3627, at *2 (E.D. La. Apr. 5, 1989).

As a matter of policy, settlement benefits parties and conserves judicial resources and is, therefore, favored by courts. *Weeks v. Merck & Co. (In re Vioxx Prods. Liab. Litig.)*, 412 F. App'x 653, 654 (5th Cir. 2010) ("Public policy favors compromise agreements and the finality of settlements."); *Courtney v. Arthur Andersen LLP*, 264 F. App'x 426, 429 (5th Cir. 2008) ("Public policy "favors and encourages" the settlement of claims between parties and permits them to release future damages as part of a settlement agreement.") "Should a court system awash in backlog delay further the disposition of a case where there is convincing proof that a settlement has been reached?" *Janneh v. GAF Corp.*, 887 F. 2d 432 (2d Cir. 1989). "As any litigator or judge can attest, the best case is a settled case....In a very real sense, all of the parties - - and the court as an institution -- win when litigation is settled amicably short of trial." *Mathewson Corp. v. Allied Marine Ind., Inc.*, 827 F.2d 850, 852, 857 (1st Cir. 1987).

A binding settlement agreement exists where there is a manifestation of mutual assent, usually in the form of an offer and an acceptance. *Lopez v. Kempthorne*, 2010 U.S. Dist. LEXIS 118749, 2010 WL 4639046, at *4 (S.D. Tex. Nov. 5, 2010). Here, the Parties attended court-ordered mediation where they reached the Agreement, which was reduced to a writing and signed by the Parties' in the presence of the mediator. [*Thomasson Decl.*, ¶2 (and ***Exh. A***).] Tolteca even made its first payment pursuant to the Agreement, after which Plaintiff filed a

Notice of Settlement [Doc. 22] with the Court. [*Id.* at ¶3.]

Once an agreement is reached, the parties cannot rescind it. "Litigants may not disavow [a settlement agreement] made and approved, for avoiding the bargain would undermine its contractual validity, increase litigation, and impair efficient judicial administration." *Gillette Air Conditioning Co. v. Scheutzow*, No. SA-10-CV-0548 FB (NN), 2011 U.S. Dist. LEXIS 139830, at *16 (W.D. Tex. Dec. 5, 2011) (quoting *White Farm Equip. Co. v. Kupcho*, 792 F.2d 526, 528 (5th Cir. 1986).

Based on the Agreement's express terms, and as set forth above, Plaintiff is entitled to summary entry of Judgment for the Parties' remaining settlement amount of $9,500.00, plus interest, and $4,085.00 for the 8.55 hours of time (to date) expended to enforce the Agreement. *Thomasson* Decl., ¶¶9-32]. A summary of Plaintiff's attorney's fees incurred in connection with this motion is set forth in the accompanying Declaration of Andrew T. Thomasson [*Id.* at ¶11] along with the facts supporting the reasonableness of the fees sought. [*Id.* at ¶¶9-10 and 12-32].

Counsel has not submitted "*Johnson* factors," as set forth in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir. 1974), but is prepared to promptly do so should the Court so direct. Counsel submits his hourly rate is within the range of typical billing rates within the Western District of Texas.

Regarding Plaintiff's counsel's hourly rate, the rate where he works is generally recognized as being appropriate. *See, McClain v. Lufkin Indus.*, 649 F.3d 374, 382 (5th Cir. 2011) citing *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995) (and collecting cases including, *Chrapliwy v. Uniroyal, Inc*., 670 F.2d 760, 768 (7th Cir. 1982) *cert. denied*, 461 U.S. 956, 103 S.Ct. 2428, 77 L.Ed.2d 1315 (1983)). Notably here, Plaintiff's counsel has an office in Menasha, Wisconsin, which is in the Eastern District of Wisconsin, where Ms. Kordus lives. [*Id.* at ¶25.] Ms. Kordus could have pursued her claims against Tolteca in the Eastern District of Wisconsin, but she chose to pursue them here which no doubt saved Tolteca—which is physically located in

San Antonio, Texas—substantial money in attorney's fees and costs from having to litigate in Green Bay, Wisconsin. Of further importance, since 2018 counsel's $475.00 hourly rate has repeatedly been approved by the Eastern District of Wisconsin in both individual and class action cases and, in 2017 this Court approved his (then) $450.00 hourly rate (*See, Bell v. Adler Wallach & Associates, Inc., et al.*, U.S. District Court, W.D. Tex. Case No. 5:16-cv-00366-OLG (October 10, 2017)). [*Id.* at ¶¶25-29.]

## V.     CONCLUSION

WHEREFORE, Plaintiff respectfully requests the Court enter Judgment in her favor as requested, for $9,500.00, plus interest, and for the $4,085.00 in fees incurred (to date) against Tolteca and for such other relief as the Court may deem appropriate. Plaintiff respectfully reserves the right to seek additional compensation incurred with replying to any opposition Defendant may file with respect to this motion.

In accordance with Fed. R. Civ. P. 69, Plaintiff further requests that this case remain pending on the docket for judgment enforcement purposes.


DATED: August 26, 2019

*s/ Andrew T. Thomasson*
Andrew T. Thomasson, Esq.
  NJ Bar No. 048362011
STERN•THOMASSON LLP
150 Morris Avenue, 2nd Floor
Springfield, NJ 07081-1315
Telephone: (973) 379-7500
Facsimile:  (973) 532-5868
E-Mail: andrew@sternthomasson.com

*One of the Attorneys for Plaintiff, Nicole Kordus*

## CERTIFICATE OF CONFERENCE

I, Andrew T. Thomasson, hereby affirm under the penalties of perjury that I attempted to confer via e-mail with Defendants' counsel, Thomas A. Clarke, on August 16, 2019  and by telephone on August 20, 2019, but I have not received any response from him to date. (*See, Thomasson Decl.,* ¶5 (and ***Exh. B***). Consequently, I do not presently know whether Defendants oppose the relief sought in this motion.

*s/ Andrew T. Thomasson*
Andrew T. Thomasson, Esq.

## CERTIFICATE OF SERVICE

I, Andrew T. Thomasson, hereby affirm under the penalties of perjury that on August 26, 2019, I served the within documents and all supporting papers on the Clerk of this Court using this Court's CM/ECF system. I also certify that the foregoing documents are being served this day on all counsel of record and Parties to this action in the manner specified, either via transmission of Notice of Electronic Filing generated by CM/EFC or in some other authorized manner for those counsel or parties who have not yet appeared or are otherwise not authorized to receive electronic Notices of Electronic Filing as noted on the Service List below.

*s/ Andrew T. Thomasson*
Andrew T. Thomasson, Esq.